IN THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT


CASE NO. 23-11411

_____

JOSEPH SIMONE,

Plaintiff-Appellant,

v.

ALEJANDRO MAYORKAS,  SECRETARY OF
HOMELAND SECURITY, UNITED STATES DEPARTMENT
OF HOMELAND SECURITY,

Defendant-Appellee.


_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
_____

INITIAL BRIEF OF APPELLANT JOSEPH SIMONE
_____

Donald R. McCoy
Florida Bar No. 887862
DONALD R. McCOY, P.A.
111 S.E. 12th Street
Fort Lauderdale, Florida  33316
Telephone:  954-618-6575
Telecopier:  954-618-6577
mccoyesquire@me.com

Attorney for Appellant
Joseph Simone

**CERTIFICATE OF INTERESTED PERSONS**
**AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to FRAP 26.1 and 11th Cir. Rule 26.1, the following is an alphabetical list of all persons and other entities with any known interest in the outcome of this appeal:

Berio, Myriam - Deputy Federal Security Director, TSA

Garland, Merrick B. - Attorney General of the United States

Gonzales, Juan Antonio - former U.S. Attorney

Greenleaf, Kimberly - Administrative Judge, EEOC

Hadden, Carlton M. - Director, Office of Federal Operations, EEOC

Kitze, Julie L. - Attorney, TSA

Matzkin, Daniel - Assistant United States Attorney

Mayorkas, Alejandro - Secretary of Homeland Security

McAleenan, Kevin - former Secretary of Homeland Security

McCoy, Donald R. - Attorney for Appellant

Lapointe, Markenzy - United States Attorney

Petri, Steven R. - Assistant U.S. Attorney

Ricke, Mary Beth - Assistant U.S. Attorney

Ruiz II, Hon. Rodolfo A. - United States District Judge

Simone, Joseph - Appellant

Tapper, Steven M. - Attorney, TSA

Transportation Security Administration

United States Department of Homeland Security

Wright, D.L. - former Federal Security Director, TSA

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant suggests it would be helpful for the Court to hear oral argument in this case which presents an issue of first impression: whether the Court should revisit its decision in *Castro v. Secretary of Homeland Security* in light of subsequent legislation, the WPEA and 5 U.S.C. §2304.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT . . . . . . . . . . . . . . . C-1

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . .i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .ii

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iv

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . viii

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . .1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

    A.    Nature of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

    B.    Course of the Proceedings and Disposition By The
        District Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        1.    Mr. Simone's Amended Complaint . . . . . . . . . . 4

        2.    The Secretary's Motion To Dismiss . . . . . . . . . . 6

        3.    The District Court's Order Dismissing The
            Amended Complaint [D.E. #26] . . . . . . . . . . . .8

    C.    Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . .9

    D.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

    SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ARGUMENT AND CITATIONS OF AUTHORITY . . . . . . . . . . .15

1.      The Whistleblower Protection Enhancement Act of 2012 provides
        at 5 U.S.C. §2304 that TSA employees, including TSO screeners
        are covered by the Rehabilitation Act, by any provision of law
        implementing it and any rule or regulation prescribed under these
        provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

2.      In holding that 5 U.S.C. §2304 and the WPEA did not modify the
        provisions of ASTA the district court failed to apply "established
        principles for harmonizing two statutes" . . . . . . . . . . . . . . . . . . 19

3.      The decision cited by the district court regarding the
        meaning of ATSA's "notwithstanding" clause, *United States
        v. McLymont,* should be distinguished . . . . . . . . . . . . . . . . . . . . . .23

        CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

        CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

        ADDENDUM

                A - 1   Text of 5 U.S.C. §2304

                A - 2   Text of 5 U.S.C. §2302

**CASES:**

*Ardestani v. United States Dep't of Justice, INS,*
          904 F.2d 1505, 1508 (11th Cir. 1990) . . . . . . . . . . . . . . . 14, 19, 20, 21

*Ardestani v. INS,*
502 U.S. 129, 135-36, 112 S. Ct. 515, 520 (1991) . . . . . . . . . . . . . . . . . . . . 21

*Castro v. Secretary of Homeland Security,*
          472 F.3d 1334 (11th Cir. 2006) . . . . . . . . . . . . . . . . . 1, 7, 9, 10, 15, 23, 25

*Chandler v. Roudebush,*
          425 U.S. 840, 864, 96 S. Ct. 1949, 1961 (1976) . . . . . . . . . . . . . . . . . . . 5

*Hamer v. City of Atlanta,*
          872 F.2d 1521, 1526 (11th Cir.1989) . . . . . . . . . . . . . . . . . . . . . . . .13-14

*Hill v. White,*
          321 F.3d 1334, 1335 (11th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . ..13

 *Morton v. Mancari,*
          417 U.S. 535, 550-51, 94 S. Ct. 2474, 2482-83,
          41 L. Ed. 2d 290 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Page v. Postmaster General,*
          493 F. App'x 994, 996 (11th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Ruedas-Rojas v. Kevin McAleenan, Secretary of Homeland Security,*
          USDC, S.D. Fla. Case Number:19-CV-22522-MARTINEZ-OTAZO-
          REYES (decided June 1, 2020) U.S. Dist. LEXIS 196949 . . . . . . . . 7, 8, 19

*Serrano-Colón v. Dep't of Homeland Sec.,*
          No. 16-1268 (SCC), 2021 U.S. Dist. LEXIS 258903, at *24 - 25
           (D.P.R., Decided December 22, 2021) . . . . . . . . . . . . . . . . . . . . . . . . 19

*Smith v. Christian*,
    763 F.2d 1322, 1325 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. McLymont*,
    45 F.3d 400, 401 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Wolf v. Postmaster General, U.S. Postal Service,*
    488 Fed. App'x. 465, 466 (11th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . .4

## STATUTES:

The Aviation and Transportation Security Act . . . . . . . . . . . . . . . . . . 1, 6, *Passim*

The Family and Medical Leave Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11, 12

The Rehabilitation Act of 1973, as amended,
    29 U.S.C. §791, et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, *Passim*

The Whistleblower Protection Enhancement Act of 2012 . . . . . . . . . . .1, *Passim*

5 U.S.C. §2302(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 14, 18, 21

5 U.S.C. §2304 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 7 - 9, 14 - 16, 18 - 22, 25

18 U.S.C.§924(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

29 U.S.C. §791 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 4, 7

29 U.S.C. §794 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

29 U.S.C. §794a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 14, 21

42 U.S.C. §12101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

42 U.S.C. §12102(4)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

42 U.S.C. 12201–12204 and 12210 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

42 U.S.C. §12111 . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 21

42 U.S.C. §1981a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 22

42 U.S.C. §2000e-5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 5, 13, 15, 21, 22

42 U.S.C. §2000e-16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 14-16, 21, 22, 23

49 U.S.C. § 44935 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

**REGULATIONS:**

29 C.F.R., Part 1614 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

29 C.F.R., Part 1630 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

29 C.F.R. §1614.105 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

 and 1614.203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

29 C.F.R. §1614.108 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

29 CFR 1614.302(d)(1)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

29 C.F.R. §1614.407(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

29 C.F.R. §1614.407(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

29 C.F.R. §1630.2(n)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

29 C.F.R. §1630.2(o)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

**RULES:**

Rule 12(b)(1), Fed. R. Civ. P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 15

Rule 12(b)(6), Fed. R. Civ. P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 13, 15

**OTHER AUTHORITIES:**

Senate Report 112-115, accompanying S. 743 . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 17

## STATEMENT OF JURISDICTION

The basis for subject matter jurisdiction in the district court was 28 U.S.C. §1331 in that Plaintiff-Appellant's Amended Complaint alleged violations of laws of the United States: the Rehabilitation Act of 1973, as amended, 29 U.S.C. §791, et seq., and the rights and remedies available to federal employees as specified at 29 U.S.C. §794a. This Court has jurisdiction of this appeal under 28 U.S.C. §1291 in that on April 28, 2023, Plaintiff-Appellant timely filed a notice of appeal from the final order of the district court, entered on March 31, 2023, which dismissed the Plaintiff-Appellant's Amended Complaint with prejudice, disposing of all parties' claims.

**STATEMENT OF THE ISSUES**

1. Did Congress, by enacting §109 of the Whistleblower Protection Enhancement Act of 2012, codified at 5 U.S.C. §2304, intend that any employee within the Transportation Security Administration, including screening personnel, shall be covered by the Rehabilitation Act?

2. Did the district court err by failing to follow the established principles of statutory construction set forth in decisions of this Court and the Supreme Court in holding that 5 U.S.C. §§2304 and 2302(b)(1) read together do not override the contrary provisions of the Aviation Transportation Security Act?

3. Should this Court revisit its decision in *Castro v. Secretary of Homeland Security,* cited infra, in light of 5 U.S.C. §2304 and hold that it provides that Mr. Simone's Amended Complaint in this case properly states a claim for relief under the Rehabilitation Act?

**STATEMENT OF THE CASE**

**A.    Nature of the Case**

Plaintiff-Appellant Joseph Simone, a former employee of the Transportation Security Administration ("TSA"), filed this action under the Rehabilitation Act of 1973, as amended, 29 U.S.C. §791, et seq., after TSA

officials removed him from federal service. He alleged that the agency discriminated against him because he has a physical disability - a mild heart condition called mitral valve prolapse which causes occasional heart palpitations. Amended Complaint [D.E. #5, p. 5].

Mr. Simone performed all of his duties as a Transportation Security Officer ("TSO") without difficulty for eight years. He received superlative performance reviews and commendations. Nonetheless, the Transportation Security Administration ("TSA") removed him from federal service solely because of his disability and because he requested an occasional day off under the Family and Medical Leave Act. [D.E. #5, p. 6 - 7].

Counts I - IV of his Amended Complaint allege that Mr. Simone was subjected to discrimination and ultimately fired because of his disability and because he requested intermittent leave as a reasonable accommodation, opposed certain unlawful actions of TSA officials, made charges of discrimination and participated in investigations under the Rehabilitation Act. [D.E. #5, p. 7 - 14].

The Rehabilitation Act requires federal agencies to take affirmative action in the hiring, placement, and advancement in federal employment of individuals with disabilities; it prohibits discrimination against individuals

with disabilities who are otherwise qualified for their positions.  29 U.S.C. §§791(b) and 794.

Several other federal statutes and regulations implement these protections.  Under 29 U.S.C. §794a the remedies, procedures and rights of federal employees set forth at 42 U.S.C. §2000e-16 are available to an employee or applicant who is aggrieved by the disposition of any complaint under the Rehabilitation Act. That subsection of Title VII provides for enforcement and the issuance of rules and regulations by the U.S. Equal Employment Opportunity Commission ("EEOC") and for civil actions to be brought under 42 U.S.C. §§2000e-5.

Thus, a federal worker "who has filed an individual complaint . . . is authorized under . . . the Rehabilitation Act to file a civil action in an appropriate United States District Court" within 90 days of receiving a final decision on his administrative complaint.  *Page v. Postmaster General,* 493 F. App'x 994, 996 (11th Cir. 2012) citing 42 U.S.C. §2000e-5 and 29 C.F.R. § 1614.407(a).

The standards used to determine violations of the Rehabilitation Act are those set forth in Title I of the American with Disabilities Act, 42 U.S.C. §12111, et seq. ("the ADA") and §§12201-12204, and 12210 thereof.  29 U.S.C. §791(f);

*Wolf v. Postmaster General, U.S. Postal Service,* 488 Fed. App'x. 465, 466 (11th Cir. 2012).

Mr. Simone brought his action against the Secretary of Homeland Security under the above provisions and under 42 U.S.C. §1981a which provides for the recovery of compensatory damages for discrimination under 42 U.S.C. §2000e-16 and 29 U.S.C. §791 and for the violation of regulations concerning the provision of reasonable accommodation.

**B.    Course of the Proceedings and Disposition By the District Court.**

**1.    Mr. Simone's Amended Complaint**

Plaintiff-Appellant commenced this action after exhausting his administrative remedies, first with TSA's Office of Civil Rights and Liberties, then in a hearing request and appeal to the EEOC.  [D.E. #5, p.4].

EEOC has published regulations concerning the provision of reasonable accommodation, 29 C.F.R., Part 1630, as well as procedural regulations at 29 C.F.R., Part 1614 for processing complaints of disability discrimination by a federal employee such as Mr. Simone.  He filed a timely formal complaint of discrimination and retaliation with TSA after first contacting an EEO counselor as required by 29 C.F.R. §1614.105; with the counselor's assistance

he attempted, without success, to have TSA officials consider his requests for accommodation.

TSA conducted a perfunctory investigation of Mr. Simone's complaint. When the investigation was completed, Mr. Simone made a timely written request for a hearing before an Administrative Judge of the EEOC under 29 C.F.R. §1614.108. He appealed to the Commission after the Administrative Judge dismissed his complaint without a hearing. On January 10, 2022, the EEOC issued a final order [D.E. 17-5] denying Mr. Simone's appeal and authorizing him to file a civil action in the United States District Court.[1] He brought this action within 90 days of receipt of the Commission's final decision on his appeal. [D.E. #5, p. 4].

His Amended Complaint alleges that Mr. Simone is a qualified individual with a disability in that with or without reasonable accommodation, he can perform the essential functions of the position he held as a TSO. In Count I he states that after he served eight years with distinction in that position certain TSA officials discriminated against him because of his disability, refused to provide reasonable accommodation; that

---

[1] Federal employees are afforded the same right to trial de novo of their employment discrimination claims as private employees enjoy under 42 USCS § 2000e-5. *Chandler v. Roudebush*, 425 U.S. 840, 864, 96 S. Ct. 1949, 1961 (1976).

they instead had Mr. Simone declared unfit for duty and removed him from federal service.  [Count I, D.E. #5, p. 7 - 8]

In Count II he alleged that there were reasonable, readily available accommodations which TSA could have provided without undue hardship, that TSA officials refused to provide any such accommodation or even to engage in an interactive process with Mr. Simone to identify potential accommodations as is required under EEOC regulations at 29 C.F.R. §1630.2(o)(3).

Count III alleges unlawful retaliation in that TSA took these actions and removed Mr. Simone from federal service because of his complaints, charges and requests for accommodation.  Count IV alleges that TSA officials unlawfully coerced, intimidated, threatened, and interfered with Mr. Simone's exercise or enjoyment of rights granted and protected by the Rehabilitation Act and the ADA.  [D.E. #5, p. 11 - 14].

## 2.    The Secretary's Motion To Dismiss

The Defendant Secretary moved to dismiss the Amended Complaint on various grounds under Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P.  [D.E. #11, p. 1-21].  The motion cited 49 U.S.C. § 44935, a provision of the Aviation and Transportation Security Act ("ATSA"), the statute which created the Transportation Security Administration following the terrorist attacks on our

country on September 11, 2001.  In *Castro v. Secretary of Homeland Security,* 472 F.3d 1334, 1337 (11th Cir. 2006) this Court held that a provision codified as a note to §44935 "exempts the Transportation Security Administration from certain requirements of the Rehabilitation Act with regard to employment of security screeners."

On this basis the Secretary claimed that the district court lacked subject matter jurisdiction.  [D.E. 11, p.  3 - 10].

The Secretary acknowledged that a more recent decision in the Southern District of Florida had held otherwise based on subsequent legislation, the Whistleblower Protection Enhancement Act of 2012, Pub. L. 112-199 ("the WPEA").   In *Ruedas-Rojas v. Kevin McAleenan, Secretary of Homeland Security,* USDC, S.D. Fla., Case Number: 19-CV-22522-MARTINEZ-OTAZO-REYES (decided June 1, 2020) the court held that a provision of the WPEA, 5 U.S.C.  §2304, "indicates clear congressional intent to override such conflicting sections of the ATSA that deny security screeners relief under the Rehabilitation Act."   (Not officially reported, the decision is published at 2020 U.S. Dist. LEXIS 196949 * and in the record below at D.E. #17-1).

The Secretary's motion conceded that the WPEA "extends the term "prohibited personnel action" to those actions which reflect discrimination "as prohibited under section 501 of the Rehabilitation Act of 1973 (29 U.S.C.

791)" and that it "provides for a remedy within the CSRA remedial scheme previously precluded by the ATSA." [D.E. #11, p. 6]. The Secretary contended however that Mr. Simone's only recourse was to file an individual action with the Merit Systems Protection Board ("MSPB") and, if necessary, an appeal to the Court of Appeals for the Federal Circuit but not by filing a lawsuit in district court. [D.E. #11, p. 7]. The Secretary also claimed there were other deficiencies in Mr. Simone's Amended Complaint that warranted dismissal but which were not addressed by the district court.

### 3.    The District Court's Order Dismissing The Amended Complaint [D.E. #26]

The district court summarized Mr. Simone's factual allegations as they were stated in the Amended Complaint. Rather than address whether subject-matter jurisdiction existed the court considered the Secretary's motion under Rule 12(b)(6). Ultimately the district court dismissed the Amended Complaint with prejudice for failure to state a claim, based upon *Castro* and other decisions interpreting the ATSA. [D.E. #26. p. 8-10].

The court disagreed with the decision and contrary outcome in *Ruedas-Rojas*. The WPEA provision which Judge Martinez held to override the conflicting provision of ATSA, 5 U.S.C. §2304, expressly applies to TSA and its employees and applicants for employment. In pertinent part it says

that "Notwithstanding any other provision of law, any individual holding or applying for a position within the Transportation Security Administration shall be covered by . . . 5 U.S.C. §2301(b)(1)." That subsection of the CSRA, in turn, expressly prohibits discrimination against federal employees under the Rehabilitation Act.

In this case, however, the district court noted that the decision in *Castro* states that "the "notwithstanding" clause in ATSA 'indicates that Congress intended for the ATSA 'to take precedence over any preexisting *or subsequently-enacted legislation* on the same subject.' " *Castro*, 472 F.3d at 1337 (emphasis added)."

On this basis the court below ruled as follows:

> The Court is not inclined to depart from well-established and binding precedent in this circuit and all others that have addressed this issue. The ATSA's "notwithstanding" clause precludes Simone from bringing the instant suit under the Rehabilitation Act, and his claims must be dismissed. [D.E. #26, p. 9].

### C. Statement of Facts

The district court's decision turned on a purely legal issue. Nonetheless the facts in Mr. Simone's case illustrate the importance of interpreting the WPEA and 5 U.S.C. §2304 as Congress intended, to provide

the same protections to TSO screeners as are afforded to all other employees of the Department of Homeland Security.

The Senate Report accompanying S. 743 discusses ATSA and the reason the WPEA provides specific protections for TSA employees. Senate Report 112-155, p. 18-20. A DOJ witness testifying in support of the Senate bill described TSO screeners as those who "stand literally at the front lines of our nation's homeland security system." *Id.*

TSA's treatment of Mr. Simone had nothing to do with the hiring standards the court addressed in *Castro* or the urgent national security concerns which led to the passage of ATSA.

Mr. Simone served for eight years as a TSO at the Fort Lauderdale-Hollywood International Airport. He is, and was, fully qualified for the TSO position, meeting all the stated requirements. His principal responsibilities involved screening airline passengers and their baggage. He performed these functions without difficulty at all times, received superlative performance appraisals each year and several special commendations. [D.E. #5, p. 5 - 7].

When he joined TSA in 2006 Mr. Simone disclosed that he was being treated for a physical disability, a heart condition known as mitral valve prolapse which caused him to experience occasional heart palpitations. A

TSA physician obtained additional information from his cardiologist, determined that Mr. Simone was medically qualified for the TSO position and cleared him to be hired.

During his eight years with TSA, the only accommodation Mr. Simone ever required was an occasional day off when he felt heart palpitations coming on.  In those instances his doctor advised him to stay home, rest and not to drive a car until the episode passed.  For several years, Mr. Simone requested and was approved to take intermittent leave under the Family and Medical Leave Act ("FMLA") based on the certification of his cardiologist that he would need time off during "flare-ups."

The ADA expressly provides that an impairment that is episodic is a covered "disability" if it would substantially limit a major life activity when active.   See 42 U.S.C. §12102(4)(D). The availability of intermittent leave enabled Mr. Simone to perform the essential functions of his position in a superlative manner for eight years. In January, 2013, a TSA official who had approved his FMLA requests in prior years arbitrarily determined that Mr. Simone was not eligible for FMLA leave because, in the official's view, his mitral valve prolapse was not a "serious health condition" within the

meaning of the statute. This official was a human resources technician with no medical training or expertise.

Mr. Simone complained about this denial of his eligibility and filed a written complaint with TSA's Office of Inspector General ("OIG"). As a result, TSA management reinstated his eligibility to take intermittent FMLA leave.

At the end of 2013 he again renewed his request to use FMLA leave if and when needed during the following year. He encountered resistance from the same human resources technician who previously said his heart problem was not a "serious health condition." This time the technician forwarded Mr. Simone's FMLA paperwork to TSA Headquarters stating management's concern that Mr. Simone's medical condition was so serious that a fitness-for-duty evaluation was needed. [D.E. 17-4, p. 5].

Officers who were similarly situated to the Plaintiff but who were not disabled were treated differently. TSA routinely allowed non-disabled officers, including some of Mr. Simone's co-workers, to take intermittent FMLA leave to care for family members who were ill without any impact on their employment. [D.E. #5, ¶26].

On August 22, 2014, while Mr. Simone was on duty TSA proposed to remove him from federal service, placed him on administrative leave and

walked him out of the airport.  No medical examination was performed; he was found to be unfit for duty solely because of his FMLA leave requests.

As noted above, Mr. Simone timely contacted an EEO counselor and initiated a formal complaint of discrimination and retaliation after TSA officials refused even to enter into the informal interactive process regarding potential accommodations.

On February 19, 2015, TSA removed Mr. Simone from federal service claiming that he was "not medically qualified" for his position.  He amended his administrative complaint to add that his removal violated the Rehabilitation Act. He brought this action after the EEOC issued a final order denying his appeal and notifying him of his right to file a civil action in an appropriate United States District Court.  [D.E. #17-5, p. 2].

### D.   Standard of Review

The Court reviews a district court's grant of a motion to dismiss under Rule 12(b)(6) for failure to state a claim *de novo*, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff.  *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

Where, as in this case, there are no contested factual issues and the Court decides solely a question of law, the Court's review is plenary. *Hamer*

*v. City of Atlanta*, 872 F.2d 1521, 1526 (11th Cir.1989); *Ardestani v. United States Dep't of Justice, INS,* 904 F.2d 1505, 1508 (11th Cir. 1990).

## SUMMARY OF ARGUMENT

When Congress passed the Whistleblower Protection Enhancement Act of 2012 (Pub. L. No. 112-199; 126 Stat. 1465) the Senate Report which accompanied the legislation indicates that the Committee members understood that TSA had broad authority to set hiring and employment standards for screening personal.   Provisions were added to the Senate bill to provide full whistleblower protections to TSA screeners and also to ensure they were covered by the employment discrimination statutes listed at 5 U.S.C. §2302(b)(1), including the Rehabilitation Act.

The WPEA added a new §2304 to the CSRA which is entitled "Prohibited Personnel Practices Affecting the Transportation Security Administration."  The text as well as the legislative history shows that the intent of this provision was to afford certain protections to screener personnel which they did not have under ATSA, including protection from discrimination under the Rehabilitation Act.

The district court erred in holding that the specific provisions of §2304 did not override the broad, general authority granted to TSA under ATSA.  This Court should reverse the district court's order dismissing Mr.

Simone's complaint under the Rehabilitation Act and remand the matter for trial.

## ARGUMENT

**1.  The Whistleblower Protection Enhancement Act of 2012 provides at 5 U.S.C. §2304 that TSA employees, including TSO screeners, are covered by the Rehabilitation Act, by any provision of law implementing it and any rule or regulation prescribed under these provisions.**

The Defendant Secretary moved to dismiss the Amended Complaint under Rule 12(b)(1), Fed. R. Civ. P., asserting that the district court lacked jurisdiction. The Secretary cited the ATSA provisions which have been held to preclude claims of disability discrimination brought by security screeners such as Mr. Simone. The leading case in this circuit, *Castro v. Sec'y of Homeland Sec.*, 472 F.3d 1334, 1337-1338 (11th Cir. 2006), however, affirmed a lower court's dismissal under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

The Court stated in *Castro* that in ATSA "Congress instructed TSA to develop hiring standards for security screeners, without regard to restraints the Rehabilitation Act may have imposed. Thus, an unsuccessful applicant (like Castro) who alleges that TSA discriminated against him on the basis of

disability when it denied his application for employment as a security screener cannot state a claim against TSA based on violation of the Rehabilitation Act."

Mr. Simone met TSA's hiring standards and served capably for eight years before TSA decided that he was "not medically qualified" because of his occasional use of FMLA leave. In the meantime, Congress passed the Whistleblower Protection Enhancement Act of 2012 (Pub. L. No. 112 -199; 126 Stat. 1465).

Both the text and the legislative history of the WPEA show that Congress intended to override those ATSA provisions which were held in *Castro* to preclude TSO screeners from filing suit under the Rehabilitation Act. The WPEA expanded whistleblower protections for most federal employees by clarifying the kinds of disclosures that are protected, providing more authority to the Office of Special Counsel and in other respects.

The legislation also added a new provision, 5 U.S.C. §2304, which is specific to TSA and entitled "Prohibited Personnel Practices Affecting The Transportation Security Administration."

In its report accompanying the WPEA the Senate Committee on Homeland Security and Governmental Affairs made particular note of need for changes to TSA's personnel system:

"The Aviation and Transportation Security Act (ATSA), which created the Transportation Security Administration (TSA) in 2001, gave the TSA Administrator broad authority to establish a personnel system notwithstanding any other law." Senate Report 112-115, p. 18.

The Committee noted that as a result the rights of TSA employees were subject to "important limitations." Senate Report 112-115, p. 19. The report quoted the testimony of a DOJ official who supported the legislation:

We are pleased to see that this bill provides full whistleblower protection to Transportation Security Administration screeners, also known as Transportation Security Officers. Transportation Security Officers stand literally at the front lines of our nation's homeland security system. They deserve the same whistleblower protections afforded to all other employees of the Department of Homeland Security. *Id.*

The Committee stated that "Therefore . . . section 109 of S. 743 extends full WPA protections to TSA employees. Section 109 of S. 743 also

extends to TSA employees the protections against the prohibited personnel practices listed under 5 U.S.C. §2302(b)(1). These prohibited actions include discrimination against an employee or applicant . . . on the basis of handicapping condition under the Rehabilitation Act of 1973." *Id.*

Section 109 was codified as 5 U.S.C. §2304. The full text of this statute is an Addendum to Appellant's brief. In pertinent part it states:

§2304. Prohibited Personnel Practices Affecting the Transportation Security Administration.

(a) In general. Notwithstanding any other provision of law, any individual holding or applying for a position within the Transportation Security Administration shall be covered by—

(1) the provisions of section 2302(b) (1) . . . [5 USCS §2302(b)(1)];

(2) any provision of law implementing section 2302(b) (1) . . . by providing any right or remedy available to an employee or applicant for employment in the civil service; and

(3) any rule or regulation prescribed under any provision of law referred to in paragraph (1) or (2).

As noted in the Committee Report the practices 5 U.S.C. §2302(b)(1) prohibits "include discrimination against an employee or applicant . . . on the basis of handicapping condition under the Rehabilitation Act of 1973."

Taken together the plain meaning of these provisions is that "notwithstanding any other provision of law" TSA screeners such as Mr.

Simone are covered by the protections of the Rehabilitation Act. The district court so held in *Ruedas-Rojas v. MacAleenan,* supra.

In a similar action brought by a TSO under the Rehabilitation Act, as well as other statutes, the district court in Puerto Rico interpreted these provisions WPEA the same and held that "the WPEA granted Rehabilitation Act protections to TSA employees." *Serrano-Colon v. Department of Homeland Security,* USDC, D. Puerto Rico, No. 16-1268(SCC), decided December 22, 2021. This decision is not officially reported but is published at 2021 U.S. Dist. LEXIS 258903. A copy is in the record at D.E. #17-2.

**2.    In holding that 5 U.S.C. §2304 and the WPEA did not modify the provisions of ASTA the district court failed to apply "established principles for harmonizing two statutes"**

In *Ardestani v. United States Dep't of Justice, INS*, 904 F.2d 1505, 1513 (11th Cir. 1990) this Court noted that "the Supreme Court has established principles of construction for harmonizing two statutes." The issue at hand was whether or not the attorney fee provisions of the Equal Access to Justice Act ("EAJA") applied to deportation proceedings.

This Court stated:

To determine the applicability of EAJA to deportation proceedings, we must examine the interaction of the relevant statutes and regulations in order to maintain the integrity of Congressional intent. We are guided in this inquiry by principles of statutory interpretation established by the Supreme Court. "The starting point in statutory interpretation is 'the language [of the statute] itself.'"[citations omitted]. *Ardestani,* supra, 904 F.2d 1505, 1508.

In Mr. Simone's case the district focused on the language of the ASTA provisions, in particular the language giving TSA broad authority to set the hiring and employment standards for screening personnel "notwithstanding any other provision of law." Section 2304, however, has this same language. Neither statute has the edge in that respect.

According to the principles stated in *Ardestani* the Court should assume that the legislative purpose of §2304 is expressed by the ordinary meaning of the words used in the statute except in the rare and exceptional circumstance when a "contrary legislative intent is expressed clearly." *Ardestani,* supra, 904 F.2d 1505, 1508.

In this case the report of the Senate committee shows that the intent behind §2304 was, consistent with the text, to extend §2302(b)(1) protections against discrimination to TSA employees, including screeners.

The Supreme Court affirmed this Court's holding in *Ardestani,* also based upon "the 'strong presumption' that the plain language of the statute expresses congressional intent."  This presumption is rebutted only "when a contrary legislative intent is clearly expressed." *Ardestani v. INS*, 502 U.S. 129, 135-36, 112 S. Ct. 515, 520 (1991).

Another principle of statutory construction is the specificity of the provisions at issue.   "Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Ardestani*, supra, 904 F.2d 1505, 1513 citing *Morton v. Mancari*, 417 U.S. 535, 550-51, 94 S. Ct. 2474, 2482-83, 41 L. Ed. 2d 290 (1974) and *Smith v. Christian*, 763 F.2d 1322, 1325 (11th Cir. 1985).

As between ATSA and the WPEA the more specific of the two statutes is §2304.   It explicitly provides that TSA employees and applicants are covered by §2302(b)(1) which, in turn, makes discrimination under the Rehabilitation Act a prohibited personnel practice.  By contrast, the ATSA provisions do not mention the Rehabilitation Act or any other statute; they

confer broad, general authority to TSA which the WPEA provisions were carefully designed to modify.

The Supreme Court applied these principles in *Morton v. Mancari*, supra, 417 U.S. 535, 550-51, 94 S. Ct. 2474, 2483 and also looked at a whether the apparently conflicting statutes were actually irreconcilable: "The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective."

The WPEA and §2304 only modify the TSA's general authority under ATSA by protecting TSA employees against certain forms of discrimination and retaliation for certain types of disclosures. Otherwise, they leave the ATSA provisions intact.

In summary, the text of §2304, its legislative history and its specificity all compel a finding that it actually extends the protections of the Rehabilitation Act to TSO screening personnel such as Mr. Simone, overriding the conflicting provisions of ATSA.

**3.    The decision cited by the district court regarding the meaning of ATSA's "notwithstanding" clause,** *United States v. McLymont,* **should be distinguished.**

The district court's focus on the clause "notwithstanding any other provision of law" in ATSA was too narrow.   In dismissing Mr. Simone's amended complaint the district court cited *United States v. McLymont*, 45 F.3d 400 (11th Cir. 1995) as support for the ruling in *Castro* that ATSA's "notwithstanding" clause indicates that Congress intended for the ATSA "to take precedence over any preexisting *or subsequently-enacted legislation* on the same subject." *Castro*, 472 F.3d at 1337 (emphasis added).   [D.E. #26, p. 8].

In *McLymont* the Court did refer to a "notwithstanding" clause as one ground for affirming a district court's order.   The order was that the appellant's sentence for carrying and using a firearm in relation to a drug trafficking crime was to run consecutively to his undischarged state sentences, not concurrently.  *McLymont*, supra, 45 F.3d 400, 401.

The statute at issue, 18 U.S.C. §924(c) says that "notwithstanding any other provision of law" such sentences "shall not run concurrently."   The appellant contended the subsequently enacted federal sentencing guidelines should be read to require concurrent sentences.   The Court held

that his argument "overlooks the plain language of 18 U.S.C. §924(c) and [another provision of the guidelines] USSG §2K2.4(a), *both of which* mandate the imposition of a consecutive sentence. *McLymont*, supra, 45 F.3d 400, 401 [Emphasis added].

While the Court held that §924(c) specifically limits the district court's discretion in sentencing so does certain express language in the "subsequently-enacted" guidelines themselves. The Court also applied other rules of statutory construction:

> In interpreting the language of the statute, this Court must assume that Congress used the words of the statute as they are commonly and ordinarily understood and must construe the statute so each of its provisions is given full effect . . . Further, the plain meaning of the statute controls unless the language is ambiguous or leads to absurd results. *McLymont*, supra, 45 F.3d 400, 401.

In this case, however, the previous statute, ATSA, is not similarly reinforced by or consistent with the "subsequently-enacted legislation," the WPEA. Applying the rules of statutory construction as stated by the Court in *McLymont* compels the conclusion that Congress did in fact intend to change the law to give screeners such as Mr. Simone rights they did not have under ATSA.

## CONCLUSION

The Court should revisit its decision in *Castro* in light of the Whistleblower Protection Enhancement Act of 2012 and find that 5 U.S.C. §2304 extended the protections of the Rehabilitation Act to TSA screeners such as Mr. Simone. The Court should reverse the district court's dismissal of Mr. Simone's civil action under the Rehabilitation Act and remand the case to the district court for trial.

Respectfully submitted.

DONALD R. McCOY, P. A.
111 S.E. 12th Street
Fort Lauderdale, Florida 33316
Telephone: (954) 618-6575
Facsimile: (954) 618-6577
mccoyesquire@me.com

By: _____/s/_____
        Donald R. McCoy
        Florida Bar No. 887862

        Attorney for Plaintiff

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was electronically filed on June 22, 2023, and served upon the following person(s) via email, with paper copies sent via First Class Mail.

Markenzy Lapointe
United States Attorney
Attorney for Appellee
99 N.E. 4th Street
Miami, Florida 33132-2111
(305) 961-9404

Daniel Matzkin
Chief, Appellate Division

_____/s/_____
Rosemarie S. McCoy


A-1

*United States Code Service > TITLE 5. GOVERNMENT ORGANIZATION AND EMPLOYEES (§§ 101 — 13146) > Part III. Employees (Subpts. A — J) > Subpart A. General Provisions (Chs. 21 — 29) > CHAPTER 23. MERIT SYSTEM PRINCIPLES (§§ 2301 — 2307)*

## § 2304. Prohibited personnel practices affecting the Transportation Security Administration

**(a) In general.** Notwithstanding any other provision of law, any individual holding or applying for a position within the Transportation Security Administration shall be covered by—

**(1)** the provisions of section 2302(b) (1), (8), and (9) [*5 USCS § 2302(b)(1)*, (8), (9)];

**(2)** any provision of law implementing section 2302(b) (1), (8), or (9) [*5 USCS § 2302(b)(1)*, (8), or (9)] by providing any right or remedy available to an employee or applicant for employment in the civil service; and

**(3)** any rule or regulation prescribed under any provision of law referred to in paragraph (1) or (2).

**(b) Rule of construction.** Nothing in this section shall be construed to affect any rights, apart from those described in subsection (a), to which an individual described in subsection (a) might otherwise be entitled under law.

## History

**HISTORY:**

Added Nov. 27, 2012, *P. L. 112-199*, Title I, § 109(a)(2), *126 Stat. 1470*.

Annotations

## Notes

**HISTORY; ANCILLARY LAWS AND DIRECTIVES**

    **Explanatory notes:**

    **Effective date of section:**

    **Other provisions:**

**Explanatory notes:**

A prior § 2304 was redesignated *[5 USCS § 2305](#)*.

**Effective date of section:**

This section took effect on enactment, as provided by § 109(c) of Act Nov. 27, 2012, *P. L. 112-199*, which appears as a note to this section.

**Other provisions:**

**Effective date of Nov. 27, 2012 amendments.** Act Nov. 27, 2012, *P. L. 112-199*, Title I, § 109(c), *126 Stat. 1471*, provides: "The amendments made by this section [adding this section and redesignating former 5 USCS §§ 2304 and 2305 as *5 USCS §§ 2305* and *2306*, respectively] shall take effect on the date of enactment of this section.".

## Research References & Practice Aids

**Hierarchy Notes:**

*5 USCS, Pt. III*

*5 USCS, Pt. III, Subpt. A, Ch. 23*

United States Code Service
Copyright © 2023 All rights reserved.

## 5 USCS § 2302

Current through Public Law 118-6, approved June 14, 2023.

*United States Code Service > TITLE 5. GOVERNMENT ORGANIZATION AND EMPLOYEES (§§ 101 — 13146) > Part III. Employees (Subpts. A — J) > Subpart A. General Provisions (Chs. 21 — 29) > CHAPTER 23. MERIT SYSTEM PRINCIPLES (§§ 2301 — 2307)*

## § 2302. Prohibited personnel practices

**(a)**

  **(1)** For the purpose of this title, "prohibited personnel practice" means any action described in subsection (b).

  **(2)** For the purpose of this section—

    **(A)** "personnel action" means—

      **(i)** an appointment;

      **(ii)** a promotion;

      **(iii)** an action under chapter 75 of this title [*5 USCS §§ 7501* et seq.] or other disciplinary or corrective action;

      **(iv)** a detail, transfer, or reassignment;

      **(v)** a reinstatement;

      **(vi)** a restoration;

      **(vii)** a reemployment;

      **(viii)** a performance evaluation under chapter 43 of this title [*5 USCS §§ 4301* et seq.] or under title 38;

      **(ix)** a decision concerning pay, benefits, or awards, or concerning education or training if the education or training may reasonably be expected to lead to an appointment, promotion, performance evaluation, or other action described in this subparagraph;

      **(x)** a decision to order psychiatric testing or examination;

      **(xi)** the implementation or enforcement of any nondisclosure policy, form, or agreement; and

      **(xii)** any other significant change in duties, responsibilities, or working conditions;

with respect to an employee in, or applicant for, a covered position in an agency, and in the case of an alleged prohibited personnel practice described in subsection (b)(8), an employee or applicant for employment in a Government corporation as defined in section 9101 of title 31;

    **(B)** "covered position" means, with respect to any personnel action, any position in the competitive service, a career appointee position in the Senior Executive Service, or a position in the excepted service, but does not include any position which is, prior to the personnel action—

      **(i)** excepted from the competitive service because of its confidential, policy-determining, policy-making, or policy-advocating character; or

      **(ii)** excluded from the coverage of this section by the President based on a determination by the President that it is necessary and warranted by conditions of good administration;

**(C)** "agency" means an Executive agency and the Government Printing Office [Government Publishing Office], but does not include—

**(i)** a Government corporation, except in the case of an alleged prohibited personnel practice described under subsection (b)(8) or section 2302(b)(9) (A)(i), (B), (C), or (D);

**(ii)**

**(I)** the Federal Bureau of Investigation, the Central Intelligence Agency, the Defense Intelligence Agency, the National Geospatial-Intelligence Agency, the National Security Agency, the Office of the Director of National Intelligence, and the National Reconnaissance Office; and

**(II)** as determined by the President, any executive agency or unit thereof the principal function of which is the conduct of foreign intelligence or counterintelligence activities, provided that the determination be made prior to a personnel action; or

**(iii)** the General Accounting Office [Government Accountability Office]; and

**(D)** "disclosure" means a formal or informal communication or transmission, but does not include a communication concerning policy decisions that lawfully exercise discretionary authority unless the employee or applicant providing the disclosure reasonably believes that the disclosure evidences—

**(i)** any violation of any law, rule, or regulation; or

**(ii)** gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

**(b)** Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—

**(1)** discriminate for or against any employee or applicant for employment—

**(A)** on the basis of race, color, religion, sex, or national origin, as prohibited under section 717 of the Civil Rights Act of 1964 (*42 U.S.C. 2000e-16*);

**(B)** on the basis of age, as prohibited under sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (*29 U.S.C. 631, 633a*);

**(C)** on the basis of sex, as prohibited under section 6(d) of the Fair Labor Standards Act of 1938 (*29 U.S.C. 206(d)*);

**(D)** on the basis of handicapping condition, as prohibited under section 501 of the Rehabilitation Act of 1973 (*29 U.S.C. 791*); or

**(E)** on the basis of marital status or political affiliation, as prohibited under any law, rule, or regulation;

**(2)** solicit or consider any recommendation or statement, oral or written, with respect to any individual who requests or is under consideration for any personnel action unless such recommendation or statement is based on the personal knowledge or records of the person furnishing it and consists of—

**(A)** an evaluation of the work performance, ability, aptitude, or general qualifications of such individual; or

**(B)** an evaluation of the character, loyalty, or suitability of such individual;

**(3)** coerce the political activity of any person (including the providing of any political contribution or service), or take any action against any employee or applicant for employment as a reprisal for the refusal of any person to engage in such political activity;

**(4)** deceive or willfully obstruct any person with respect to such person's right to compete for employment;

**(5)** influence any person to withdraw from competition for any position for the purpose of improving or injuring the prospects of any other person for employment;

**(6)** grant any preference or advantage not authorized by law, rule, or regulation to any employee or applicant for employment (including defining the scope or manner of competition or the requirements for any position) for the purpose of improving or injuring the prospects of any particular person for employment;

**(7)** appoint, employ, promote, advance, or advocate for appointment, employment, promotion, or advancement, in or to a civilian position any individual who is a relative (as defined in section 3110(a)(3) of this title [*5 USCS § 3110(a)(3)*]) of such employee if such position is in the agency in which such employee is serving as a public official (as defined in section 3110(a)(2) of this title [*5 USCS § 3110(a)(2)*]) or over which such employee exercises jurisdiction or control as such an official;

**(8)** take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of—

    **(A)** any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—

        **(i)** any violation of any law, rule, or regulation, or

        **(ii)** gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety,

    if such disclosure is not specifically prohibited by law and if such information is not specifically required by Executive order to be kept secret in the interest of national defense or the conduct of foreign affairs;

    **(B)** any disclosure to the Special Counsel, or to the Inspector General of an agency or another employee designated by the head of the agency to receive such disclosures, of information which the employee or applicant reasonably believes evidences—

        **(i)** any violation (other than a violation of this section) of any law, rule, or regulation, or

        **(ii)** gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety; or

    **(C)** any disclosure to Congress (including any committee of Congress) by any employee of an agency or applicant for employment at an agency of information described in subparagraph (B) that is—

        **(i)** not classified; or

        **(ii)** if classified—

            **(I)** has been classified by the head of an agency that is not an element of the intelligence community (as defined by section 3 of the National Security Act of 1947 (*50 U.S.C. 3003*)); and

            **(II)** does not reveal intelligence sources and methods.[;]

**(9)** take or fail to take, or threaten to take or fail to take, any personnel action against any employee or applicant for employment because of—

    **(A)** the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation—

        **(i)** with regard to remedying a violation of paragraph (8); or

        **(ii)** other than with regard to remedying a violation of paragraph (8);

    **(B)** testifying for or otherwise lawfully assisting any individual in the exercise of any right referred to in subparagraph (A) (i) or (ii);

**(C)** cooperating with or disclosing information to the Inspector General (or any other component responsible for internal investigation or review) of an agency, or the Special Counsel, in accordance with applicable provisions of law; or

**(D)** refusing to obey an order that would require the individual to violate a law, rule, or regulation;

**(10)** discriminate for or against any employee or applicant for employment on the basis of conduct which does not adversely affect the performance of the employee or applicant or the performance of others; except that nothing in this paragraph shall prohibit an agency from taking into account in determining suitability or fitness any conviction of the employee or applicant for any crime under the laws of any State, of the District of Columbia, or of the United States;

**(11)**

**(A)** knowingly take, recommend, or approve any personnel action if the taking of such action would violate a veterans' preference requirement; or

**(B)** knowingly fail to take, recommend, or approve any personnel action if the failure to take such action would violate a veterans' preference requirement;

**(12)** take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in section 2301 of this title [*5 USCS § 2301*];

**(13)** implement or enforce any nondisclosure policy, form, or agreement, if such policy, form, or agreement—

**(A)** does not contain the following statement: "These provisions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by existing statute or Executive order relating to (1) classified information, (2) communications to Congress, (3) the reporting to an Inspector General or the Office of Special Counsel of a violation of any law, rule, or regulation, or mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, or (4) any other whistleblower protection. The definitions, requirements, obligations, rights, sanctions, and liabilities created by controlling Executive orders and statutory provisions are incorporated into this agreement and are controlling."; or

**(B)** prohibits or restricts an employee or applicant for employment from disclosing to Congress, the Special Counsel, the Inspector General of an agency, or any other agency component responsible for internal investigation or review any information that relates to any violation of any law, rule, or regulation, or mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, or any other whistleblower protection; or

**(14)** access the medical record of another employee or an applicant for employment as a part of, or otherwise in furtherance of, any conduct described in paragraphs (1) through (13).

This subsection shall not be construed to authorize the withholding of information from Congress or the taking of any personnel action against an employee who discloses information to Congress. For purposes of paragraph (8), (i) any presumption relating to the performance of a duty by an employee whose conduct is the subject of a disclosure as defined under subsection (a)(2)(D) may be rebutted by substantial evidence, and (ii) a determination as to whether an employee or applicant reasonably believes that such employee or applicant has disclosed information that evidences any violation of law, rule, regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety shall be made by determining whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee or applicant could reasonably conclude that the actions of the Government evidence such violations, mismanagement, waste, abuse, or danger.

**(c)**

**(1)** In this subsection—

    **(A)** the term "new employee" means an individual—

        **(i)** appointed to a position as an employee on or after the date of enactment of this subsection; and

        **(ii)** who has not previously served as an employee; and

    **(B)** the term "whistleblower protections" means the protections against and remedies for a prohibited personnel practice described in paragraph (8) or subparagraph (A)(i), (B), (C), or (D) of paragraph (9) of subsection (b).

**(2)** The head of each agency shall be responsible for—

    **(A)** preventing prohibited personnel practices;

    **(B)** complying with and enforcing applicable civil service laws, rules, and regulations and other aspects of personnel management; and

    **(C)** ensuring, in consultation with the Special Counsel and the Inspector General of the agency, that employees of the agency are informed of the rights and remedies available to the employees under this chapter [*5 USCS §§ 2301* et seq.] and chapter 12 [*5 USCS §§ 1201* et seq.], including—

        **(i)** information with respect to whistleblower protections available to new employees during a probationary period;

        **(ii)** the role of the Office of Special Counsel and the Merit Systems Protection Board with respect to whistleblower protections; and

        **(iii)** the means by which, with respect to information that is otherwise required by law or Executive order to be kept classified in the interest of national defense or the conduct of foreign affairs, an employee may make a lawful disclosure of the information to—

            **(I)** the Special Counsel;

            **(II)** the Inspector General of an agency;

            **(III)** Congress (including any committee of Congress with respect to information that is not classified or, if classified, has been classified by the head of an agency that is not an element of the intelligence community and does not reveal intelligence sources and methods); or

            **(IV)** another employee of the agency who is designated to receive such a disclosure.

**(3)** The head of each agency shall ensure that the information described in paragraph (2) is provided to each new employee of the agency not later than 180 days after the date on which the new employee is appointed.

**(4)** The head of each agency shall make available information regarding whistleblower protections applicable to employees of the agency on the public website of the agency and on any online portal that is made available only to employees of the agency, if such portal exists.

**(5)** Any employee to whom the head of an agency delegates authority for any aspect of personnel management shall, within the limits of the scope of the delegation, be responsible for the activities described in paragraph (2).

**(d)** This section shall not be construed to extinguish or lessen any effort to achieve equal employment opportunity through affirmative action or any right or remedy available to any employee or applicant for employment in the civil service under—

    **(1)** section 717 of the Civil Rights Act of 1964 (*42 U.S.C. 2000e-16*), prohibiting discrimination on the basis of race, color, religion, sex, or national origin;

**(2)** sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (*29 U.S.C. 631*, *633a*), prohibiting discrimination on the basis of age;

**(3)** under section 6(d) of the Fair Labor Standards Act of 1938 (*29 U.S.C. 206(d)*), prohibiting discrimination on the basis of sex;

**(4)** section 501 of the Rehabilitation Act of 1973 (*29 U.S.C. 791*), prohibiting discrimination on the basis of handicapping condition; or

**(5)** the provisions of any law, rule, or regulation prohibiting discrimination on the basis of marital status or political affiliation.

**(e)**

**(1)** For the purpose of this section, the term "veterans' preference requirement" means any of the following provisions of law:

**(A)** Sections 2108, 3305(b), 3309, 3310, 3311, 3312, 3313, 3314, 3315, 3316, 3317(b), 3318, 3320, 3351, 3352, 3363, 3501, 3502(b), 3504, and 4303(e) [*5 USCS §§ 2108*, *3305(b)*, *3309*, *3310*, *3311*, *3312*, *3313*, *3314*, *3315*, *3316*, *3317(b)*, *3318*, *3320*, *3351*, *3352*, *3363*, *3501*, *3502(b)*, *3504*, and *4303(e)*] and (with respect to a preference eligible referred to in section 7511(a)(1)(B) [*5 USCS § 7511(a)(1)(B)*]) subchapter II of chapter 75 [*5 USCS §§ 7511* et seq.] and section 7701 [*5 USCS § 7701*].

**(B)** Sections 943(c)(2) and 1784(c) of title 10.

**(C)** Section 1308(b) of the Alaska National Interest Lands Conservation Act [*16 USCS § 3198(b)*].

**(D)** Section 301(c) of the Foreign Service Act of 1980 [*22 USCS § 3941(c)*].

**(E)** Sections 106(f), 7281(e), and 7802(5) of title 38.

**(F)** Section 1005(a) of title 39.

**(G)** Any other provision of law that the Director of the Office of Personnel Management designates in regulations as being a veterans' preference requirement for the purposes of this subsection.

**(H)** Any regulation prescribed under subsection (b) or (c) of section 1302 [*5 USCS § 1302*] and any other regulation that implements a provision of law referred to in any of the preceding subparagraphs.

**(2)** Notwithstanding any other provision of this title, no authority to order corrective action shall be available in connection with a prohibited personnel practice described in subsection (b)(11). Nothing in this paragraph shall be considered to affect any authority under section 1215 [*5 USCS § 1215*] (relating to disciplinary action).

**(f)**

**(1)** A disclosure shall not be excluded from subsection (b)(8) because—

**(A)** the disclosure was made to a supervisor or to a person who participated in an activity that the employee or applicant reasonably believed to be covered by subsection (b)(8)(A)(i) and (ii);

**(B)** the disclosure revealed information that had been previously disclosed;

**(C)** of the employee's or applicant's motive for making the disclosure;

**(D)** the disclosure was not made in writing;

**(E)** the disclosure was made while the employee was off duty;

**(F)** the disclosure was made before the date on which the individual was appointed or applied for appointment to a position; or

**(G)** of the amount of time which has passed since the occurrence of the events described in the disclosure.

**(2)** If a disclosure is made during the normal course of duties of an employee, the principal job function of whom is to regularly investigate and disclose wrongdoing (referred to in this paragraph as the "disclosing employee"), the disclosure shall not be excluded from subsection (b)(8) if the disclosing employee demonstrates that an employee who has the authority to take, direct other individuals to take, recommend, or approve any personnel action with respect to the disclosing employee took, failed to take, or threatened to take or fail to take a personnel action with respect to the disclosing employee in reprisal for the disclosure made by the disclosing employee.

# History

**HISTORY:**

Added Oct. 13, 1978, *P. L. 95-454*, Title I, § 101(a), *92 Stat. 1114*; April 10, 1989, *P. L. 101-12*, § 4, *103 Stat. 32*; Oct. 30, 1990, *P. L. 101-474*, § 5(d), *104 Stat. 1099*; Oct. 2, 1992, *P. L. 102-378*, § 2(5), *106 Stat. 1346*; Oct. 6, 1993, *P. L. 103-94*, § 8(c), *107 Stat. 1007*; Oct. 14, 1994, *P. L. 103-359*, Title V, § 501(c), *108 Stat. 3429*; Oct. 29, 1994, *P. L. 103-424*, § 5, *108 Stat. 4364*; Sept. 16, 1996, *P. L. 104-197*, Title III, § 315(b)(2), *110 Stat. 2416*; Sept. 23, 1996, *P. L. 104-201*, Div A, Title XI, Subtitle B, § 1122(a)(1), Title XVI, Subtitle A, § 1615(b), *110 Stat. 2687*, 2741; Oct. 31, 1998, *P. L. 105-339*, § 6(a), (b), (c)(2), *112 Stat. 3187*, 3188; Oct. 14, 2008, *P. L. 110-417*, [Div A,] Title IX, Subtitle D, § 931(a)(1), *122 Stat. 4575*; Nov. 27, 2012, *P. L. 112-199*, Title I, §§ 101(a), (b)(1)(B), (2)(B), (C), 102–104(b)(1), 105, 112, *126 Stat. 1465*, 1468, 1472; Jan. 14, 2013, *P. L. 112-277*, Title V, § 505(a), *126 Stat. 2478*; Dec. 18, 2015, *P. L. 114-113*, Div J, Title II, § 238, *129 Stat. 2700*; June 14, 2017, *P. L. 115-40*, § 2, *131 Stat. 861*; Oct. 26, 2017, *P. L. 115-73*, Title I, §§ 103, 107(a)(1), *131 Stat. 1236*, 1238; Dec. 12, 2017, *P. L. 115-91*, Div A, Title X, Subtitle H, § 1097(b)(1)(B), (c)(1), *131 Stat. 1616*, 1618; Dec. 20, 2019, *P.L. 116-92*, Div E, Subdiv 1, Title LVII, Subtitle B, § 5721, *133 Stat. 2175*; Jan. 1, 2021, *P.L. 116-283*, Div A, Title XI, Subtitle B, § 1138, *134 Stat. 3905*.

Annotations

# Notes

**HISTORY; ANCILLARY LAWS AND DIRECTIVES**

    **References in text:**

    **Explanatory notes:**

    **Effective date of section:**

    **Amendment Notes**

    **1989.**

    **1990.**

    **1992.**

    **1993.**

    **1994.**